UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**TASHARA PINET,** as the
Administrator of the ESTATE
OF RAUL PINET, JR.,

                Plaintiff,                5:11-cv-1325
                                                    (GLS/DEP)
       v.

**THE COUNTY OF ONONDAGA et al.,**

                Defendants.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Franzblau, Dratch Law Firm<br>233 Broadway<br>Suite 2701<br>New York, NY 10271 | BRIAN M. DRATCH, ESQ. |
| **FOR THE DEFENDANTS:**<br>Onondaga County Department of Law<br>John H. Mulroy Civic Center<br>421 Montgomery Street<br>10th Floor<br>Syracuse, NY 13202 | KATHLEEN M. DOUGHERTY, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Tashara Pinet, as the Administrator of the Estate of Raul Pinet, Jr., commenced this action against defendants the County of Onondaga, the Onondaga County Sheriff's Office, Kevin E. Walsh, Richard Carbery, Kevin Brisson, and several John Does, pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Eighth, and Fourteenth Amendments, and claims under New York State law for wrongful death, negligent retention and hiring, and assault and battery.  (Am. Compl., Dkt. No. 5.)  Pending before the court are defendants' motion for summary judgment, (Dkt. No. 19), Pinet's cross motion to amend/correct and for partial summary judgment as to liability, (Dkt. No. 29), and defendants' motion requesting that Pinet's request to submit videos be denied, (Dkt. No. 33).  For the reasons that follow, defendants' motion for summary judgment is granted, Pinet's cross motion is denied, and defendants' motion regarding Pinet's submission of videos is denied as moot.[1]

---

[1] Defendants have filed a letter motion, (Dkt. No. 33), seeking denial of Pinet's request to submit videos of the incident in question and make them part of the record, (Dkt. No. 32).  Because the court grants summary judgment for defendants and dismisses Pinet's amended complaint on unrelated grounds, the court is not required to reach the merits of Pinet's claims, and therefore this motion is denied as moot.

## II. **Background**[2]

Plaintiff Tashara Pinet was married to Raul Pinet ("decedent") on April 17, 2005. (Defs.' Statement of Material Facts (SMF) ¶ 2, Dkt. No. 19, Attach. 6.) On August 6, 2010, the City of Syracuse Police Department responded to a 911 call. (*Id.* ¶ 18.) When they arrived at the scene, the responding officers were told that a strange male, identified as decedent, had attempted to gain entry to another's residence, at which point the officers observed decedent inside a residence and heard the occupants yelling for help. (*Id.* ¶¶ 18-19.) At that point, the officers advised decedent that he was under arrest and attempted to effectuate his arrest. (*Id.* ¶ 20.) Decedent resisted the arrest, and began physically struggling with the officers. (*Id.*) The police officers were ultimately able to subdue decedent and place him into a van, by which he was transported to the Onondaga County Justice Center, where he was to be temporarily detained prior to arraignment. (*Id.* ¶¶ 21-22.)

Upon arrival at the Justice Center, the arresting officers advised members of the Onondaga County Sheriff's Office working at the Justice

---

[2] Unless otherwise noted, the facts are not in dispute.

Center that decedent had been aggressive and combative during his arrest. (*Id.* ¶¶ 23-25.) The police van was received at the Justice Center by Onondaga County Sheriff's Deputy Alissa Coglitore Moore and Sergeant Rhonda Salvagni, who attempted to convince decedent to exit the van, as he was reluctant to do so. (*Id.* ¶¶ 25-26.) Moore and Salvagni noticed that decedent was sweating, had abrasions to his face and arms, and was acting erratically; this led them to believe that he was under the influence of drugs. (*Id.* ¶¶ 26-29.) Justice Center personnel were unable to convince decedent to exit the van, so Deputy Moore requested that Lieutenant James Barrella and Sergeant Mark Casselmon, members of the Sheriff's Emergency Response Team (SERT), report to the carport. (*Id.* ¶¶ 33-34, 37.) The SERT unit is responsible for moving noncompliant, violent, or combative arrestees, and SERT members receive specialized training for these particular tasks. (*Id.* ¶¶ 35-36.)

Lieutenant Barrella and Sergeant Casselmon then attempted to convince decedent to cooperate and voluntarily exit the van, which decedent began to do. (*Id.* ¶¶ 41-43.) However, shortly after exiting the van, as he was being escorted into the Justice Center, decedent again began struggling with the officers, attempting to break their hold, and

spitting. (*Id.* ¶¶ 43, 45, 51.) The SERT members present responded by taking decedent to the ground in an attempt to gain control of him, placing him in emergency response belt restraints, and handcuffing his arms and legs. (*Id.* ¶¶ 44-46, 49-51.) A spit hood was also placed on decedent's head. (*Id.* ¶ 52.) Decedent was then carried to the Justice Center's time-out room, a room fitted with windows and cameras which allow Justice Center personnel to observe the occupant. (*Id.* ¶¶ 54-56.) Decedent was placed face down in the time-out room, while still in restraints, in order to permit a nurse to safely examine him. (*Id.* ¶ 56-57.)

Shortly after decedent was placed in the time-out room, he was observed by Nurse Sonya Santana. (*Id.* ¶ 57.) Santana lifted the spit hood from decedent's face to observe his injuries; she observed that decedent was responsive and in no apparent distress, and there were no indications that he had any difficulty breathing. (*Id.* ¶ 59.)

Following the examination by Santana, the SERT team attempted to remove the restraints and handcuffs from decedent, but he continued to be combative. (*Id.* ¶ 62.) Decedent requested that the spit hood be removed from his head, and he was informed that he could remove it himself when the SERT team had left the room. (*Id.* ¶ 63.) The SERT team then

5

removed decedent's restraints and performed a "non-compliant exit" because decedent remained combative. (*Id.* ¶¶ 64-66.) A "non-compliant exit" involves placing the individual in a figure four leg lock and controlling his hands so that officers can safely exit the room. (*Id.* ¶¶ 64-65.) Upon performing the exit, some of the SERT team members returned to their original posts, while Sergeant Salvagni, Deputy Moore, Sergeant Casselmon and Lieutenant Barella remained at the door of the time-out room to monitor decedent. (*Id.* ¶¶ 67-68.)

While observing decedent from outside of the time-out room, these officers noticed that decedent was not moving, and remained in a seemingly unnatural position after the SERT team exited the room. (*Id.* ¶¶ 69-70.) While Sergeant Casselmon speculated that decedent may be dead, Sergeant Salvagni expressed concern that decedent was faking unconsciousness in an attempt to get the officers to re-enter the room. (*Id.* ¶ 71.) When the officers' attempts to startle decedent failed to cause him to move, they decided that the SERT team should be reassembled to enter the room and check on decedent's condition. (*Id.* ¶¶ 72-73.) Approximately seven minutes elapsed between the time that the SERT team first exited the time-out room and the time when they were re-

assembled and entered the room for a second time to check on decedent. (*Id.* ¶ 74.) Upon re-entry, SERT members discovered that decedent was unresponsive, and an ambulance was called. (*Id.* ¶¶ 75-76.) Nurse Santana and SERT team members performed CPR until medical personnel arrived and took decedent to the hospital, where he was pronounced dead. (*Id.* ¶¶ 78-80.)

The parties dispute the actual cause of decedent's death. Following decedent's death, the Onondaga County Medical Examiner's office conducted an autopsy and concluded that the cause of death was sudden cardiac arrest due to cocaine induced excited delirium syndrome, with decedent's prone restraint as a contributory condition. (*Id.* ¶ 87.) However, Dr. John Kirby, an expert retained by Pinet, opined that decedent's death was due to asphyxia during his restraint. (Pl.'s Statement of Material Facts (SMF) ¶ 19, Dkt. No. 29, Attach. 3 at 5-7; Dkt. No. 29, Attach. 9 at 2.) The Final Report of the New York State Commission of Correction regarding its investigation into the incident indicates the same. (Pl.'s SMF ¶ 16; Dkt. No. 29, Attach. 7 at 2.)

Pinet served a notice of claim on either October 18 or October 20, 2010, (Defs.' SMF ¶ 1; Dkt. No. 24, Attach. 1 at 2-5), commenced this

action on November 8, 2011, (*see generally* Compl., Dkt. No. 1), and filed an Amended Complaint on December 14, 2011, (Am. Compl.). Following joinder of issue, (Dkt. No. 6), the pending motions were filed.

### III. **Standards of Review**

### A. **Leave to Amend**

"[W]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Laskowski v. Liberty Mut. Fire Ins. Co.*, No. 5:11-cv-340, 2013 WL 5127039, at *2 n.3 (N.D.N.Y. Sept. 12, 2013) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (quoting *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009)). Further, "the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance

8

of the deadline." *Id.* (internal quotation marks and citation omitted).

B. <u>**Summary Judgment**</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd*, 489 F. App'x 500 (2d Cir. 2012).

## IV. <u>Discussion</u>

At the outset, the court notes that in her response to defendants' motion for summary judgment, Pinet has either consented to the dismissal of, or has conceded that she is not able to prove, several of the claims arguably asserted in her amended complaint. (Dkt. No. 29, Attach. 10 at 4-7.) Accordingly, Pinet's Eighth and Fourteenth Amendment claims, her claims for negligent retention and hiring, her claims against the County Sheriff's Office, and her claims against Walsh, Carbery, and Brisson, are dismissed. Consequently, the claims that remain before the court consist of a single federal claim of excessive force under the Fourth Amendment against the County and the Doe defendants, and state law claims for wrongful death and assault and battery.

9

**A.    Motion to Amend**

With respect to Pinet's claims against the Doe defendants, in her response to defendants' motion for summary judgment, she seeks leave to amend her amended complaint to substitute named individuals for the Doe defendants.  (Dkt. No. 29 at 2.)  The court notes that Pinet has failed to identify, either in her notice of motion or in her supporting memorandum, the provision under which she is moving for leave to amend her amended complaint.  (*Id.*; Dkt. No. 29, Attach. 10 at 3-4.)     Here, Pinet has not demonstrated, or even alleged, good cause to modify the court's scheduling order and allow an amendment after the deadline set by the court.  In her moving papers, Pinet simply states that "it was never necessary to amend the [amended] complaint, because, [she] was convinced that the matter was going to resolve itself."  (Dkt. No. 29, Attach. 10 at 3.)  The court's pretrial scheduling order required the parties to join any additional parties by August 31, 2012.  (Dkt. No. 10 at 1.)  After several extensions, the court, by text order on February 26, 2013, set final deadlines of June 28, 2013 for discovery, and August 30, 2013 for dispositive motions.  As defendants point out, Pinet was provided with the names and addresses of each of the individuals she is seeking to add to

10

this case on April 13, 2012, in defendants' Rule 26 initial disclosures. (Dkt. No. 24, Attach. 8 at 4.) The court is reluctant to grant leave to amend at this late juncture, particularly because Pinet's proposed second amended complaint, (Dkt. No. 29, Attach. 2), merely adds named defendants to the caption of the pleading and still leaves the court without any notion of what each named defendant is alleged to have done during the incident. Pinet has thus failed to demonstrate good cause for her proposed amendment at this late stage, and therefore her motion for leave to amend the amended complaint is denied. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").

**B.    Section 1983 claims**

Pinet's 1983 claims against the remaining defendant, the County of Onondaga, consist of allegations that defendants' actions "deprived [decedent] of rights[,] privileges[,] and immunities . . . to be secure in [his] person, to be free from physical assault, battery, [and] punishment." (Am. Compl. ¶ 11.) In her motion response papers, Pinet clarifies that "the

defendants' actions in restraining decedent in the carport in such a manner as to place a spithood over his head which hampered his breathing and placing him in a prone position for 7 to 10 minutes which ultimately resulted in his death is a cognizable claim for excessive force." (Dkt. No. 29, Attach. 10 at 6.) Defendants assert that they are entitled to summary judgment on this claim because Pinet cannot establish, and, in fact, has not even alleged, a municipal policy, practice, or custom so as to hold the County liable under 42 U.S.C. § 1983. (Dkt. No. 20 at 4-6; Dkt. No. 31, Attach. 1 at 3-4.)

A municipality may be liable for the constitutional violations of its employees provided that any such violations occurred pursuant to an official policy or custom. *See Mayo v. Cnty. of Albany*, No. 07-cv-823, 2009 WL 935804, at *2 (N.D.N.Y. Apr. 3, 2009); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). A successful claim of municipal liability under section 1983, therefore, requires the plaintiff "'to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)).

Here, Pinet has failed to allege in her amended complaint that the County had a policy or custom in place which resulted in a violation of decedent's constitutional rights. In fact, as defendants point out, Pinet explicitly stated in her response to interrogatories that she was "not alleging a custom, policy or practice." (Dkt. No. 24, Attach. 14 at 4.) Only in her response to defendants' motion does Pinet mention that the County Sheriff's Office "did have policies in place regarding the arrestees such as the decedent that directly caused his death." (Dkt. No. 29, Attach. 10 at 5.) This conclusory assertion, which is unsupported by any citation to the record, does not, however, cure Pinet's failure to allege a policy or custom in her amended complaint or negate her affirmative assertion in response to interrogatories that she is not alleging a custom, policy or practice. *See Monell*, 436 U.S. at 694. Therefore, dismissal of Pinet's section 1983 claims is appropriate.

**C.  State Law Claims**

Because Pinet's remaining wrongful death, assault, and battery claims are issues wholly of state law, the court declines to exercise supplemental jurisdiction over those claims. "In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over

pendent state law claims is within the court's discretion." *Butler v. LaBarge*, No. 9:09-CV-1106, 2010 WL 39077258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)). When all federal claims have been dismissed before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *Kolari*, 455 F.3d at 122. Accordingly, the court declines jurisdiction over any state law claims and they are dismissed from this action. Notably, Pinet is not left without any remedy, as 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations while these claims were pending, and for an additional thirty days following their dismissal, unless the applicable state law provides for a longer tolling period.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Pinet's cross motion to amend and for partial summary judgment on liability (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Pinet's amended complaint (Dkt. No. 5) is

14

**DISMISSED**; and it is further

**ORDERED** that defendants' motion requesting denial of Pinet's request to submit videos (Dkt. No. 33) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 26, 2013
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court